# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

VERNON D. HARRIS III,

           Petitioner,

     vs.                    **Case No. 09-3165**

DAVID R. MCKUNE, Warden;
STEVEN SIX, Attorney
General,
           Respondents.

_____

## <u>MEMORANDUM AND ORDER</u>

This case is before the court upon petitioner's request for relief pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial of one count of first degree felony murder in violation of K.S.A. 21-3401. The jury found that the felony murder was done while in the commission of or attempting to commit a sale of cocaine. Petitioner had also been charged with felony murder done while in the commission or attempted commission of robbery. The prosecution dismissed this charge before the case was submitted to the jury.

Petitioner received a life sentence with the possibility of parole after 20 years. Petitioner's conviction was affirmed on direct appeal by the Kansas Supreme Court. <u>State v. Harris</u>, 105 P.3d 1258 (Kan. 2005). Petitioner filed a petition for state habeas relief under K.S.A. 60-1507. This petition was denied by the trial court. No evidentiary hearing was conducted upon the state habeas petition. The denial was affirmed by the Kansas Court

of Appeals in <u>Harris v. State</u>, 2008 WL 4416026 (Kan.App. 2008), and review by the Kansas Supreme Court was denied on April 7, 2009.

I.   <u>FACTUAL BACKGROUND</u>

The murder alleged in this case occurred on December 31, 2001 at approximately 11:30 a.m. in Wichita, Kansas.  The victim was a man named Benny Zeigler, who was shot in the head.  The theory of the prosecution was that petitioner and Lana Jackson were involved in a cocaine sale with Zeigler outside the house of Patricia Shelinbarger, who was acquainted with Jackson but not petitioner or Zeigler.  According to the prosecution, petitioner, Jackson and Zeigler requested and were denied entry into Shelinbarger's house. As they were walking back toward the street a scuffle ensued. Pepper spray was employed and, during the scuffle, Zeigler was fatally shot near the top of his head.  Approximately two weeks later, petitioner was interrogated about the incident.  Petitioner told different versions of the events.  Ultimately, he told a version which admitted his involvement in the incident, saying that his role was to watch his friends' backs during a drug deal.[1] Robert Chisholm, a Wichita Police Department detective who interrogated petitioner, testified that he noticed the odor of pepper spray on the jacket petitioner wore when he was being

_____

[1] This version as recounted in Chisholm's testimony involved more persons at the scene than Shelinbarger said she observed in her testimony.  Petitioner told Chisholm that Eric Donaldson, Lana Jackson and someone named "Bo" were at the scene of the shooting. Trial transcript, Vol. 8, at pp. 62-63.

interrogated.

During her testimony, Patricia Shelinbarger stated that petitioner, Zeigler and Jackson came to her house and then walked back toward the street after they were not allowed in her home. She said that the two men started to fight while Jackson stood aside. She said that she heard gunshots fired but did not see them fired. She also testified that she saw Jackson and petitioner exit the scene in a car.

The prosecution relied heavily upon petitioner's statements to Detective Chisholm. During direct examination, Chisholm stated that he told petitioner that "we had people saying he was at the scene." Trial transcript ("Tr."), Vol. 8 at p. 21. There was no objection to this testimony. During Chisholm's direct testimony the video tape of petitioner's interrogation was played for the jury.

During the cross-examination of Detective Chisholm, petitioner's defense attorney attempted to demonstrate that petitioner told many different and untrue versions of what happened in response to misleading statements from his interrogators, the threat of being charged with premeditated murder, and coercive interrogation techniques. Counsel's apparent strategy was to influence the jury to disbelieve some of the inculpatory statements petitioner made during his interrogation and to discredit some of the detectives' statements during the interrogation. This was done

in part by showing that some of petitioner's statements were contrary to information the detectives had gathered from other persons.

Petitioner's attorney posed several questions probing what Detective Chisholm told petitioner regarding the information the police knew from out-of-court statements of other persons.

> Q. And then you told [petitioner] that you talked to a number of people and that they told you that petitioner was at the scene of the shooting?
>
> A. I don't recall if we said that a number of people had said he was at the shooting or that we had talked to a number of people and that we had heard that he was at the scene of the shooting, but, yes, essentially those words were used.
>
> Q. Okay. That was not an accurate statement, was it?
>
> A. No, sir. Well, we had talked to a number of people. At that point I believe only one person had placed him at the scene.
>
> Q. So, again, it wasn't an accurate statement?
>
> A. I don't recall the total context of how it was said. If I said a number of people had put him at the scene, that was not accurate.
>
> Q. I will provide you with a transcript. Would that refresh your memory?
>
> A. It could.
>
> Q. I'll refer you to page two. I'll show it to you. Just right there.
>
> A. It says I've talked to a number of people and I have been hearing that you were there. That sounds similar to what was probably said.
>
> Q. As a matter of fact, none of the non-participant eyewitnesses had identified [petitioner] at the shooting;

is that correct?

A.  That's right.

. . . . .

Q.  You're aware that Patricia Shelinbarger was present at the scene?

A.  Yes.

Q.  And you're aware that she identified somebody else other than [petitioner] as being the person that was the shooter; is that correct?

A.  Yes.

Q.  As a matter of fact, that guy was . . . Terence Harvell was his name.  Correct?

A.  Yes, it was.

Q.  And you guys did investigate that, of course?

A.  Yes.

. . . .

Q.  There were a number of other people at the Shelinbarger house that saw what happened.  Correct?

A.  Yes.

Q.  That would have been Patricia Shelinbarger, Taralea Shelinbarger and, I believe, Bianca Bentley?

A.  I believe Jessica Shelinbarger was also there - -

Q.  Yes, that's correct.  And they all pretty much stated that they identified somebody else other than [petitioner] as being the shooter; is that correct?

A.  Yes, sir.

Q.  And that was the same Terence Harvell who we referred to earlier?

A.  Yes.

Tr., Vol. 8, at pp. 44-47.

Petitioner's attorney repeated the point that Chisholm told petitioner that he had "all those other people" putting petitioner at the scene of the crime, when that was not accurate. Tr., Vol. 8, at p. 50. He also got Detective Chisholm to admit that the interrogators had falsely said that petitioner had been picked out of a lineup.

> Q. And then again you told [petitioner] that you had people who would pick him out of a lineup?
>
> A. Yes.
>
> . . . .
>
> Q. And that was not an accurate statement, was it?
>
> A. No.

Tr., Vol. 8 at pp. 49-50. In elaborating upon this point, petitioner's trial counsel again elicited testimony regarding information learned from other persons who were not in court:

> Q. Now, you started talking to [petitioner] about people who had allegedly seen [petitioner] with Lana Jackson the day of the shooting. Correct?
>
> A. I believe so.
>
> Q. And these people would be a man named Russell Cope and Donna Martin?
>
> A. Yes.
>
> Q. And they told law enforcement they had seen Lana Jackson in the car with a black male. Correct?
>
> A. Yes.
>
> Q. Then you told [petitioner] that they had picked him

6

out of a photo lineup.  Correct?

. . . .

A.  Okay.

Q.  So, basically you told him that, again, he'd been
picked out of a photo lineup from those people?

A.  We told him that we'd been showing lineups to people
and that people had been picking people out of lineups,
yes, sir.

Tr., Vol. 8 at pp. 56-57.

During cross-examination, petitioner's trial counsel also
attempted to show that petitioner's statements during interrogation
did not accord with what other persons told the police.  This
included statements from petitioner which supported the
prosecution's theory that a drug deal was involved with the
killing.

Q.  [Petitioner] also stated that he followed everybody
out to Plainview in his own car.  Correct?

A.  That's right.

Q.  And that he arrived at the scene of the shooting in
his own car.  Correct?

A.  That's right.

Q.  And based on all the evidence that you've received
and are aware of, including interviews, you don't believe
that's true, do you?

A.  No, sir, I do not.

Q.  In fact, no one saw a third car at the scene of the
shooting; is that correct?

A.  No.  Nobody did see a third car, sir.

Q.  And no one saw three black males walk up to the Shelinbarger house; is that correct?

A.  Yes.

Q.  You talked to other people about this drug deal. Correct?

A.  That's right.

Q.  And does [petitioner] accurately state the amount of drugs being involved?

A.  He goes between one ounce and two ounces.  I believe everybody else had it at closer to four and a half ounces.

Q.  And then he stated that the amount involved was about $700?

A.  For one ounce.  Six hundred, I believe, for one ounce.

Q.  So, he's talking about $700 to $1400 being involved?

A.  That's what he's talking about, yes, sir.

Q.  And evidence you've received elsewhere is that we're talking about money somewhere around the $4000 range?

A.  We heard numbers in that area, yes, sir.

Tr., Vol. 8 at pp. 60-61.

Later in the cross-examination, petitioner's trial counsel got Detective Chisholm to admit that although a woman named Jessica Cruz had been with Lana Jackson and Eric Donaldson on the morning of Zeigler's murder, she had not seen petitioner with Jackson and Donaldson.  Tr., Vol. 8 at p. 62.  Detective Chisholm also admitted that he had information that petitioner clocked into his job at 12:12 p.m. on the day of Zeigler's murder.  Detective Chisholm

further agreed on cross-examination that he had information that the shooter was struck in the head with a gun, but that he noticed no marks on petitioner's head.  Tr., Vol. 8 at p. 64.

Again during petitioner's cross-examination of Detective Chisholm, an out-of-court statement from Lana Jackson was elicited:

> Q.    Now, after Lana Jackson is mentioned in the interrogation you tell [petitioner] that we've talked to other people and other people put you there.  That means the scene of the shooting; is that correct?
>
> A.   Yes.
>
> Q.   Again, that's not an accurate statement, is it?
>
> A.   Besides him, the only person that I talked to who put him there was Lana.
>
> Q.   So that's not an accurate statement?
>
> A.   That's right.

Tr., Vol. 8 at p. 65.

A hearsay statement was also brought forth in cross-examination regarding whether there were drugs at the scene.

> Q.   Now, [petitioner] told you that Lana had drugs at that time.  Correct?
>
> A.   I don't recall if he said Lana or Bo had it, but one of them did have drugs.
>
> Q.   And in your investigation you're aware that there was no drugs brought to the scene by Lana?
>
> A.   According to the people I've talked to, yes, sir, that's right.
>
> Q.   So, that statement by [petitioner] is not an accurate statement?
>
> A.   No, sir.

Tr., Vol. 8 at p. 66. These statements were elicited in part to show the falsity of petitioner's "final story" during his interrogation that "the whole thing was a drug deal gone bad." Tr., Vol. 8 at p. 65.

On redirect examination, the prosecutor asked questions of Detective Chisholm to establish that Terence Harvell was not involved in the crime in question despite the initial report from Patricia Shelinbarger and others. When Chisholm began to state what Harvell told him, petitioner's trial counsel objected on the basis of hearsay, and the trial judge asked the prosecutor to avoid hearsay. Tr., Vol. 8 at p. 71. Almost immediately, the prosecutor shifted topics to ask:

> Q. Will you list the names of the people that told you that a drug deal was occurring.
>
> A. We've heard it from Lana Jackson, Jessica. Jessica Cruz knew about a supposed drug deal. Mr. Cope, Russell Cope, female who was with him named Donna Martin, [petitioner]. I believe those are the ones that I can think of off the top of my head right now.

Id. Petitioner's trial counsel did not object to this question or answer.

Following the jury verdict convicting petitioner of felony murder, petitioner's trial counsel filed a motion for new trial. Among other arguments, petitioner asserted that he had filed and the trial court had granted a pretrial motion in limine which was to exclude statements made by Lana Jackson to law enforcement on the grounds that the statements were inadmissable hearsay and a

10

violation of the principles discussed in <u>Bruton v. United States</u>, 391 U.S. 123, 137 (1968).  Petitioner claimed he should have a new trial because testimony was allowed in violation of the in limine order.  <u>State v. Harris</u>, Case No. 02 CR 0252 at p. 154.  The trial court overruled the motion for a new trial, holding with regard to Lana Jackson's statements that "anything that came in in that regard was as a result of the door having been opened to that subject matter."  Transcript of hearing on new trial motion, Vol. 10 at p. 41.

II.  <u>HABEAS STANDARDS</u>

A writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence presented at trial."  28 U.S.C. § 2254(d)(1)&(2).  State court factual findings are presumed correct, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

The Supreme Court has stated that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in our cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."

11

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413.

The law limits the authority of the court to hold an evidentiary hearing upon petitioner's application for relief:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that – – (A) the claim relies on – – (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

   III.   <u>ARGUMENTS AND ANALYSIS</u>

      A.   <u>Illegal arrest</u>

Petitioner's first argument is that his statement to the police should have been suppressed because it was the product of an illegal arrest. Petitioner was interrogated by police after he was arrested for a parole violation. Petitioner claims that probable cause did not exist for petitioner's arrest. This argument was not raised on direct appeal. Nor was it raised during plaintiff's state habeas proceeding, except in the context of a claim for

ineffective assistance of counsel. Therefore, it should not be considered by this court because of procedural default. As held by the United States Supreme Court in O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999), a petitioner's failure to timely seek review by the state's highest appellate court results in procedural default of any claims not presented to such court. The court shall address petitioner's ineffective assistance of counsel arguments later in this opinion.

### B.  Confrontation rights

Petitioner contends that the prosecution violated his rights under the Confrontation Clause by introducing out-of-court statements of persons who did not testify and, thus, were not available for cross-examination. Specifically, petitioner claims:

> During the trial the prosecution had one of its officers testify falsely that several persons had identified petitioner as the shooter. That testimony in itself clearly violated the confrontation clause because none of the alleged declarants were there to testify. Moreover, even though the prosecutor [knew] this testimony to be false there were no measures taken to correct it. Upon cross examination, defense counsel simply asked the officer to clear up his already introduced false, confrontation clause violating testimony to reveal that only a single person had made such a statement. Then on recross the state specifically solicited from the officer that Ms. Jackson had identified the petitioner.

Doc. No. 1 at p. 3.

Petitioner appears to be referring to the testimony of Detective Chisholm. The court has examined his direct testimony. There is no reference in Chisholm's direct testimony that several

13

persons had identified petitioner as the shooter.

Chisholm did testify on direct examination that the interrogators told petitioner that they "had people saying he was at the scene . . . we needed him to tell us the truth." Tr., Vol. 8 at p. 21. There was no objection to this testimony perhaps because the statement was not introduced for the truth of the matters stated. During the cross-examination, Chisholm admitted that only one person had placed petitioner at the scene, even though he said otherwise during his interrogation of petitioner. Tr., Vol. 8 at pp. 44-45.

Petitioner did not object to these matters at trial. On direct appeal petitioner's arguments relating to the admission of hearsay were rejected for failing to make a timely and specific objection to preserve the issue for appeal. Harris, 105 P.3d at 1268.

Petitioner's Confrontation Clause claim must be rejected for the following reasons. First, as respondent correctly contends, petitioner has not established grounds to overcome the state procedural bar identified on direct appeal. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Fairchild v. Workman, 579 F.3d 1134, 1141 (10th Cir. 2009) ("[c]laims that are defaulted in state court on adequate and independent state procedural grounds will not be considered by a habeas court, unless the [applicant] can demonstrate cause and prejudice or a fundamental miscarriage of

justice"). Second, the statement identified in the petition before this court apparently was not made; there was no statement from an out-of-court declarant that petitioner was the shooter. Third, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004); U.S. v. Faulkner, 439 F.3d 1221, 1226 (10th Cir. 2006). The statement that "they had people saying" that petitioner was at the scene of the killing, appears to have been introduced for purposes other than establishing the truth the matter asserted. Fourth, on cross-examination of Detective Chisholm, it was made clear that only one person, Lana Jackson, placed petitioner at the scene of the killing. Thus, petitioner waived any Confrontation Clause argument with regard to this statement. See U.S. v. Lopez-Medina, 596 F.3d 716, 730-31 (10th Cir. 2010). Finally, petitioner did not suffer prejudice from the admission of a statement that people said petitioner was at the scene of the killing. Petitioner's trial counsel established on cross-examination that the statement was not correct and that only Lana Jackson placed petitioner at the scene. In addition, the prosecution had other testimony of petitioner's involvement from Patricia Shelinbarger and petitioner's own statements during interrogation. Therefore, any possible violation of the Confrontation Clause was harmless. See U.S. v. Chavez, 481 F.3d 1274, 1277 (10th Cir. 2007) (Confrontation Clause violations

are subject to harmless error analysis).

        C.  <u>Right to remain silent</u>

Petitioner contends that habeas relief is warranted because the prosecuting attorney violated petitioner's constitutional rights by commenting upon petitioner's right not to testify. Petitioner refers to the following comments during closing argument:

> "I do want to point out instruction number 12 to you that I talked about that a defendant in a criminal trial has a constitutional right in a criminal trial not to testify. You can't draw any inference from that. I know the 12 of you know that. The reason I point that out is because your verdict must be founded entirely upon the evidence admitted and the law as given through these instructions, okay, on the evidence. So, my question is who says Mr. Harris was scared and he makes it up. [Defense counsel] does.

> "A trial is the free flow of information that the attorneys give to the factfinder, which is you, and through the rules of evidence and the law we give you what we want. [Defense counsel] sits up here and tells you oh, this is what Harris was really thinking, that he was scared. You have no evidence before you on that. You have no evidence. My point is that you base your verdict on the evidence, not what's not there, because then you go off on speculation: hey, why did the State dismiss that count two in the alternative charge, it was a felony murder where a robbery occurred. There's a very good reason. Why did I give 30 minutes of that tape and not the whole thing. There's a very good reason for that.

> . . . .

> "My point is that you base your verdict on the evidence, not [defense counsel's] convenient explanation that hey, my client was scared."

Tr., Vol. 9 at pp. 36-37.

It is well settled that a prosecutor must not comment on a defendant's exercise of his or her right to silence. <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965). However, a prosecutor may "'comment on a defendant's failure to call certain witnesses or present certain testimony.'" <u>Matthews v. Workman</u>, 577 F.3d 1175, 1188 (10th Cir. 2009) <u>cert. denied</u>, 130 S.Ct. 1900 (2010) (quoting <u>Trice v. Ward</u>, 196 F.3d 1151, 1167 (10th Cir. 1999)). A prosecutor may also make a fair response to a claim made by defendant or his counsel. See <u>U.S. v. Robinson</u>, 485 U.S. 25, 32 (1988) (prosecutor may refer to the opportunity to testify in response to defense argument in closing that government had not given defendant a chance to explain his side of the story). According to the Tenth Circuit, "the dispositive legal inquiry is 'whether the language used [by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent.'" <u>Matthews</u>, 577 F.3d at 1188 (quoting <u>Battenfield v. Gibson</u>, 236 F.3d 1215, 1225 (10th Cir. 2001)).

In this case, the Kansas Supreme Court held that "[w]hen considered in light of the prefatory statement and the court's instructions to the jury, the prosecutor's response to [petitioner's] attorney's claim that [petitioner] was scared does not rise to the level of being so gross and flagrant as to prejudice the jury against [petitioner] and deny his constitutional

right to a fair trial." <u>Harris</u>, 105 P.3d at 1268. We believe this holding is a reasonable application of clearly established law. There was no manifest intention by the prosecutor to mention petitioner's failure to testify. The prosecutor was merely responding to the argument of petitioner's trial counsel. The jury could have construed the prosecutor's remarks as referring to the absence of evidence from Detective Chisholm that petitioner appeared scared. Moreover, the prosecutor cautioned the jury not to draw an inference from the failure to testify and made reference to the jury instructions. For these reasons, petitioner has not shown that the state court's findings constituted an unreasonable application of clearly established federal law, as determined by the Supreme Court, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See <u>Showalter v. McKune</u>, 2008 WL 4889992 at *2 (10th Cir. 11/13/2008) (involving remark that no witness testified as to defendant's subjective belief concerning self-defense); <u>Howard v. Moore</u>, 131 F.3d 399, 421 (4th Cir. 1997) <u>cert. denied</u>, 525 U.S. 843 (1998) (response to defense counsel's argument that defendant was remorseful); <u>United States v. Blanton</u>, 531 F.2d 442, 444 (10th Cir. 1975) <u>cert. denied</u>, 425 U.S. 935 (1976) (responding to defense counsel's comment that defendant had no guilty knowledge); <u>Taylor v. Renico</u>, 2008 WL 2745129 at *7 (E.D.Mich. 7/14/2008) (response to defense counsel's claim that inculpatory statement was coerced).

D.  <u>Newly discovered evidence</u>

Next, petitioner argues that he was denied his due process rights when the state court refused to give him a new trial after new evidence was discovered to prove his innocence.  According to petitioner, a cellmate of Lana Jackson's submitted an affidavit stating that Jackson told her that petitioner was not involved in Zeigler's shooting.  Petitioner also claims that "Amanda Bailey made a videotaped statement in regards to another codefendant [Eric Donaldson] stating that petitioner had not been involved in the shooting."  Doc. No. 1 at p. 4.

The Kansas Supreme Court affirmed the denial of a new trial. The court held that the statement by Lana Jackson's cellmate constituted inadmissible hearsay and that Eric Donaldson had recanted his videotaped statement when he was interrogated by the police and, therefore, the statement had little, if any, credibility.[2]  The trial court also reasoned that Donaldson's statement lacked credibility because Donaldson said Lana Jackson was the shooter, in contradiction of an independent witness, Patricia Shelinbarger, who said that a black male was the shooter.

Petitioner's newly discovered evidence claim must be rejected

---

[2] There may be a slight difference between petitioner's new trial argument before this court and his argument before the Kansas Supreme Court.  The Kansas Supreme Court refers to a videotape from Eric Donaldson received by petitioner's wife.  <u>Harris</u>, 105 P.3d at 1268.  Perhaps petitioner's wife is Amanda Bailey.

for the following reasons.  First, the Tenth Circuit has held that newly discovered evidence "generally will not warrant habeas relief absent an independent constitutional violation."  <u>Love v. Roberts</u>, 259 Fed.Appx. 58, 64 (10th Cir. 12/6/2007) <u>cert. denied</u>, 522 U.S. 1271 (2008) (citing <u>Clayton v. Gibson</u>, 199 F.3d 1162, 1180 (10th Cir. 1999)).  This holding was based upon the Supreme Court's decision in <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993) where the Court stated:  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  As discussed throughout this opinion, petitioner has not demonstrated an independent constitutional violation.  Nor has petitioner made a persuasive claim of actual innocence based upon the newly discovered evidence.  The affidavit from Lana Jackson's cellmate is hearsay which, even if admitted, is merely impeachment evidence.  The affidavit and the videotape from Eric Donaldson, which was subsequently recanted, would probably not have had an impact upon the jury's verdict.  Thus, the state court's finding is not an unreasonable construction of established Supreme Court precedent as applied to the facts of this case.  Finally, there is no indication that petitioner made a due process argument to the state court.  Petitioner merely argued state law grounds for granting a new trial.  Therefore, any due process claim was not

fairly presented to the state courts and must be considered defaulted. See <u>Dorsey v. McKune</u>, 553 F.Supp.2d 1287, 1301 (D.Kan. 2008).

E. <u>Insufficient evidence - corpus delicti</u>

Petitioner contends that there was insufficient evidence to support the jury verdict of felony murder because there was insufficient evidence of the underlying felony, that is, the attempted drug transaction. As petitioner discusses in his appellate brief for his state habeas proceeding, the Kansas rule of <u>corpus delicti</u> provides that in a case of felony murder there must be evidence independent of petitioner's confession showing the underlying felony. <u>State v. Bradford</u>, 864 P.2d 680, 685 (Kan. 1993). In <u>Bradford</u>, the court emphasized that a great amount of independent corroborative evidence was not needed and found that circumstantial evidence that a Pizza Hut employee was killed during the course of an attempted robbery was sufficient to corroborate the defendant's confession. Here, petitioner contends that there was no corroborative evidence supporting his extrajudicial statement that Zeigler was killed during a drug sale or attempted drug sale.

Respondent contends that petitioner's claim should be rejected on the grounds of procedural default. Petitioner did not raise his <u>corpus delicti</u> argument on direct appeal. It was first raised in his state habeas proceedings. As explained in <u>Alford v. State</u>, 212

P.3d 250, 257 (Kan.App. 2009), trial errors are to be corrected by direct appeal and not raised in a K.S.A. 60-1507 motion, unless the trial errors affect constitutional rights <u>and</u> there were exceptional circumstances excusing the failure to appeal.[3]

The court in <u>Alford</u> cites <u>Trotter v. State</u>, 200 P.3d 1236 (2009) in support of its holding. The Kansas Supreme Court in <u>Trotter</u> held that ineffective assistance of counsel can be an exceptional circumstance allowing a petitioner to raise an argument for the first time before the district court in a K.S.A. 60-1507 motion when the issue could have been raised on direct appeal. 200 P.3d at 1246. Petitioner alleges ineffective assistance of counsel in his petition. While the court will consider the ineffective assistance issue in more detail later in the opinion, the court need not do so at this point. The consensus of judicial opinion appears to be that <u>corpus delicti</u> rules are matters of state law, not federal constitutional law. E.g., <u>Evans v. Luebbers</u>, 371 F.3d 438, 442-43 (8th Cir. 2004) <u>cert. denied</u>, 543 U.S. 1067 (2005); <u>West v. Johnson</u>, 92 F.3d 1385, 1393-94 (5th Cir. 1996) <u>cert. denied</u>, 520 U.S. 1242 (1997); <u>Williams v. Lecureux</u>, 1993 WL 445090 (6th Cir. 11/1/1993). Because the misapplication of the <u>corpus delicti</u> rule

---

[3] Respondent also contends that petitioner failed to raise the sufficiency of the evidence issue to the state appellate court in his state habeas proceedings. However, we believe the issue was raised on pages 12-13 of petitioner's appellate brief. The appellate court appeared to reject the argument while discussing petitioner's ineffective assistance of counsel claim. <u>Harris v. State</u>, 2008 WL 4416026 at *5-*6 (Kan.App. 2008).

does not appear to affect a federal constitutional right regarding the sufficiency of the evidence, the court does not believe an exception to the procedural default rule (as described in <u>Alford</u> and <u>Trotter</u>) can be applied in this case.

As already noted, this court will not grant habeas relief upon claims that are defaulted in state court on adequate and independent state procedural grounds, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. <u>Fairchild</u>, 579 F.3d at 1141. Any allegation of cause and prejudice stemming from petitioner's claim of ineffective assistance of counsel can be considered when the court decides whether ineffective assistance of counsel provides an independent basis for habeas relief. Petitioner has not set forth any reasons within his pleadings for the court to find that there has been a fundamental miscarriage of justice. Therefore, the court finds that petitioner's claim regarding the sufficiency of the proof of the sale or attempted sale of cocaine under the <u>corpus delicti</u> rule must be rejected on the grounds of procedural default.

F.   <u>Ineffective assistance of counsel</u>

Petitioner alleges ineffective assistance of his trial and appellate counsel.

Ineffective assistance of counsel claims are governed by the standards in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). "A petitioner must show both that counsel's performance was deficient

and that the deficient performance prejudiced the petitioner's defense." <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003). "Deficient performance" is proven by demonstrating that counsel's performance "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. "Prejudice" is proven by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. This standard requires less than a preponderance of the evidence; petitioner does not have to prove more probably than not that the outcome would have been different. <u>Smith v. Mullin</u>, 379 F.3d 919, 942 (10th Cir. 2004).

The Supreme Court has stated:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, that the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

<u>Strickland</u>, 466 U.S. at 689 (interior citations and quotations omitted).

In making the prejudice determination, a court must evaluate

the totality of the evidence, that adduced during trial and during the habeas proceedings. <u>Smith</u>, 379 F.3d at 942.

> Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

<u>Strickland</u>, 466 U.S. at 695-96.

A habeas petitioner may succeed upon a claim of ineffective assistance of appellate counsel if he shows 1) his appellate counsel's performance was somehow deficient, and 2) that he suffered prejudice as a result of this deficient performance. <u>Coronado v. Ward</u>, 517 F.3d 1212, 1216 (10th Cir.) <u>cert. denied</u>, 129 S.Ct. 134 (2008). Our review of appellate counsel's performance must be "highly deferential." <u>U.S. v. Challoner</u>, 583 F.3d 745, 749 (10th Cir. 2009). The Tenth Circuit has further stated:

> The omission of a 'viable' issue . . . does not in and of itself constitute ineffective assistance of counsel. . . . [The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. . . . Nevertheless, the omission of a "dead-bang winner" by counsel is deficient performance which may result in prejudice to a defendant. . . . A "dead-bang winner" is an issue which was obvious from the trial record <u>and</u> which would have resulted in a

reversal on appeal.

Id. (quotations and citations omitted).

     1.   <u>Failure to file motion to suppress alleging illegal arrest</u>

Petitioner alleges that his trial attorney was constitutionally ineffective because he failed to file a motion to suppress claiming that petitioner's statements to the police were the product of an illegal arrest. Petitioner claims that his arrest was based upon the uncorroborated and inconsistent statements which Lana Jackson made to the police.

The state district court rejected this claim stating:

the [Kansas] Supreme Court has determined the statement was properly admitted, and therefore [petitioner's] claim of ineffective assistance fails. Further, trial counsel did, in fact, move to suppress the statement prior to trial.

<u>Harris v. State of Kansas</u>, Case No. 06 CV 0339 at p. 37. However, the Kansas Supreme Court did not rule upon the issue of probable cause for arrest because, as respondent notes and as the state trial court noted in the same order, that issue was never raised on direct appeal. Petitioner's trial counsel did file a motion to suppress, but not on the grounds of illegal arrest. So, the state district court did not cogently address petitioner's state habeas claim of illegal arrest.

On appeal to the Kansas Court of Appeals petitioner argued that the district court's determination was "patently wrong" and asserted that the matter should be remanded for an evidentiary

hearing. Brief of Appellant, pp. 9-10.

The Kansas Court of Appeals rejected petitioner's claim
stating:

> Here, the murder investigation began with a witness
> reporting that an unidentified male in the company of
> Jackson shot the victim, Zeigler, during a fight. The
> witness provided a general description of the male and
> identified Jackson. During the course of the subsequent
> investigation, the police also spoke to Jackson's buyer
> for the drug transaction, Russell Cope. Cope and his
> girlfriend, Donna Martin, told officers that they saw
> Harris with Jackson on the morning of the murder.
> Consequently, Harris was circumstantially connected to
> the murder even before Jackson was arrested.

> Harris and Jackson were questioned on the same date.
> When the police interrogated Jackson, she implicated
> Harris and Donaldson in the drug transaction and the
> shooting. According to Jackson, she drove Harris and
> Donaldson to the Hilltop area of Wichita after the
> shooting. Chisholm independently corroborated that
> Harris' parents live in the Hilltop area. Based on the
> evidence, Chisholm contacted Harris' parole officer, who
> issued an arrest and detain order for a parole violation.
> Harris was subsequently arrested by a parole officer, a
> procedure specifically authorized by K.S.A. 2001 Supp.
> 75-5217(a).

> Based on the circumstances, Harris' arrest was
> supported by probable cause and was not illegal. The
> information supporting the arrest came primarily from
> Jackson, but the information was corroborated through
> Chisholm's independent investigation. Consequently, the
> decision of Harris' counsel not to challenge Harris'
> arrest was objectively reasonable. In addition, Harris
> cannot establish prejudice by his counsel's failure to
> challenge the arrest. Harris' counsel was not ineffective
> for failing to challenge the arrest, and the district
> court did not err in summarily denying this claim.

Harris, 2008 WL 4416026 at *4.

The Tenth Circuit has observed that: "Most courts that have
considered the Fourth Amendment implications of seizing a parole

27

violator have held that a parolee remains in legal custody during the period of his parole and therefore that the retaking of a parole violator does not constitute an arrest for Fourth Amendment purposes. . . . '[P]robable cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid. The arrest of a parolee is more like a mere transfer of the subject from constructive custody into actual or physical custody.'" Jenkins v. Currier, 514 F.3d 1030, 1033 (10th Cir. 2008) (quoting U.S. v. Butcher, 926 F.2d 811, 814 (9th Cir. 1991)).

Petitioner has not denied that he was arrested as a parole violator, and he has not demonstrated that his arrest failed to satisfy the lesser standard for seizing a parole violator. Therefore, he has not shown this court that the denial of his ineffective assistance of counsel argument regarding his alleged illegal arrest was contrary to clearly established federal law. It appears that if petitioner's trial counsel had filed a motion to suppress on the grounds of an unlawful arrest, the motion would have failed. Consequently, petitioner's related ineffective assistance of counsel argument also must fail.

## 2. Failure to challenge charging document

Petitioner asserts that his trial counsel's failure to file a motion challenging the validity of the charging information constituted ineffective assistance of counsel. The charging

information alleged that petitioner killed "Bennie L. Zeigler, while in the commission of or the attempt to commit an inherently dangerous felony, to-wit: Sale of Cocaine, as defined by K.S.A. 65-4161 or Attempted Sale of Cocaine, as defined by K.S.A. 21-3301, by shooting him, inflicting injuries from which the said Bennie L. Zeigler did die on December 31, 2001." <u>State v. Harris</u>, Case No. 02 CR 0252 at p. 86.

Petitioner alleges that the information charged an invalid offense, that is, attempt to commit an attempted sale of cocaine and that the information fails to allege the elements of the underlying felony. We reject both parts of petitioner's argument.

The Kansas Court of Appeals found that the charging document satisfied the "common-sense rule" used in Kansas courts, noting that there was no allegation or proof that the alleged flaws in the document hindered petitioner's ability to prepare a defense, avoid double jeopardy or receive a fair trial. <u>Harris</u>, 2008 WL 4416026 at *4-*5. The court believes this is a reasonable interpretation of clearly established federal law. Cf., <u>U.S. v. Dashney</u>, 117 F.3d 1197, 1205 (10th Cir. 1997) (setting forth similar federal constitutional standard). Therefore, petitioner's trial counsel was not deficient and petitioner did not suffer prejudice because of the failure to file a motion challenging the information. Next, regarding the elements of felony murder, the Kansas statute governing felony murder lists two elements: 1) killing a human

being and 2) in the commission or, attempt to commit or flight from an inherently dangerous felony. State v. Jackson, 124 P.3d 460, 463 (Kan. 2005). Petitioner has not cited established federal law as determined by the Supreme Court to show that the failure to include the elements of the inherently dangerous felony in the charging document constitutes a defect in the charging document. Another court has found that a reasonable construction of the law does not require the elements of predicate crimes to be charged in a felony murder case. See Sutton v. Waddington, 2008 WL 3243947 (W.D.Wash. 8/5/2008). Therefore, the court shall reject this claim of ineffective assistance of counsel.

### 3. Failure to investigate witnesses

Petitioner asserts that his trial counsel was ineffective for failing to investigate the following persons and perhaps call them to testify: Lana Jackson, Eric Donaldson, Jessica Cruz, Clifton Brown, and girls at Patricia Shelinbarger's house. The Kansas Court of Appeals considered this contention and rejected it for the following reasons, among others. According to the court, petitioner could not establish that Jackson and Donaldson's testimony would have been favorable or that they would have been available to testify in petitioner's trial. Jessica Cruz was not present at the time of the shooting and, therefore, could not have testified that petitioner was not involved in the shooting. Clifton Brown's testimony (which suggested that Eric Donaldson was

the shooter) would not have exculpated petitioner from aiding and abetting the crime. Finally, the Kansas Court of Appeals found that the testimony of the girls at Patricia Shelinbarger's house would have been cumulative to the testimony of Patricia Shelinbarger.

When an ineffective assistance of counsel claim is based on a failure to investigate and elicit testimony from witnesses, the petitioner must "show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial. . . . Moreover, . . . the petitioner ordinarily should . . . demonstrate with some precision, the content of the testimony they would have given at trial." <u>Lawrence v. Armontrout</u>, 900 F.2d 127, 130 (8th Cir. 1990) (interior citations and quotations omitted). The petitioner must not only make a specific, affirmative showing as to what the missing evidence would have been, but also prove that the witness's testimony would have produced a different result. <u>Patel v. United States</u>, 19 F.3d 1231, 1237 (7th Cir. 1994). Speculation does not satisfy petitioner's obligation to demonstrate a reasonable probability that the outcome would have been different. <u>U.S. v. Boone</u>, 62 F.3d 323, 327 (10th Cir.) <u>cert. denied</u>, 516 U.S. 1014 (1995). Nor does it warrant an evidentiary hearing. <u>Tafoya v. Tansy</u>, 9 Fed.Appx. 862 at **6 (10th Cir. 2001).

Upon careful review, the court is convinced that the state

court ruling that petitioner could not establish prejudice from the alleged deficiency of performance was not an unreasonable application of clearly established federal law. Therefore, this claim is rejected.

4.     Failure to hire an interrogation technique expert, and
5.     Failure to have jacket tested for pepper spray

The court shall consider these two claims together. Petitioner argues that he received ineffective assistance of counsel because his trial counsel failed to hire an expert upon interrogation techniques and failed to have his jacket tested for pepper spray. These claims are too speculative for this court to find that the state court's rejection of the claims was an unreasonable application of clearly established federal law. Petitioner does not provide a specific showing that an interrogation expert would testify (as petitioner implies) that petitioner inculpated himself to curry favor with his interrogators or that a test of the jacket for pepper spray was possible which could have or would have been favorable to petitioner's defense. Therefore, the court shall reject these claims of ineffective assistance of counsel. See Cummings v. Sirmons, 506 F.3d 1211, 1233 (10th Cir. 2007) cert. denied, 128 S.Ct. 2943 (2008) (rejecting ineffective assistance claim because petitioner never identified precisely what purported experts would have testified to); Cannon v. Mullin, 383 F.3d 1152, 1165 (10th Cir. 2004) cert. denied, 544

U.S. 928 (2005) (ineffective assistance claim fails when petitioner fails to indicate what helpful testimony an expert would or could provide); <u>Tafoya</u>, 9 Fed.Appx. 862 at **6 (speculation about what an expert could have said is not enough to demonstrate a reasonable probability that the outcome would have been different); see also, <u>United States v. Snyder</u>, 787 F.2d 1429, 1432 (10th Cir.) <u>cert. denied</u>, 479 U.S. 836 (1986) (rebutting defendant's assertion additional testimony would have been helpful by concluding "it is at least as reasonable, and maybe more so, to speculate that the testimony of those witnesses would have damaged defendant's case").

### 6. <u>Failure to object to sufficiency of the evidence – corpus delicti</u>

Petitioner asserts that his trial counsel and appellate counsel were ineffective because they failed to argue that the evidence supporting the underlying felony of sale of cocaine was insufficient due to the absence of evidence corroborating petitioner's extrajudicial statements as required by the Kansas <u>corpus delicti</u> rule.[4]  As previously noted, and as recognized by the Kansas Court of Appeals in its decision rejecting petitioner's claim, Kansas law requires evidence independent of a defendant's confession to prove an underlying felony in a felony murder case. <u>Harris</u>, 2008 WL 4416026 at *5 (quoting <u>Bradford</u>, 864 P.2d at Syl.

---

[4]Counsel's alleged ineffective assistance in failing to assert state rules governing the sufficiency of the evidence is a federal constitutional issue which can be raised in a § 2254 petition. <u>West</u>, 92 F.3d at 1394.

1). The Kansas Court of Appeals rejected petitioner's claim because it found that:

> [Petitioner's] confession was corroborated by other evidence, including [Lana] Jackson's statement to [Detective] Chisholm that Harris shot Zeigler while trying to rob him during a drug sale.

Harris, 2008 WL 4416026 at *6.

Lana Jackson did not testify at petitioner's trial, and no recorded statement from Jackson was introduced into evidence. Statements by Lana Jackson were referenced by Detective Chisholm during Chisholm's testimony. Only one of these statements referred to a drug sale. This is the exchange previously quoted:

> Q. Will you list the names of the people that told you that a drug deal was occurring.
>
> A. We've heard it from Lana Jackson, Jessica. Jessica Cruz knew about a supposed drug deal. Mr. Cope, Russell Cope, female who was with him named Donna Martin, [petitioner]. I believe those are the ones that I can think of off the top of my head right now.

Tr., Vol. 8, at p. 71. Contrary to the Kansas Court of Appeals, our review of the trial transcript has not uncovered a statement attributed to Lana Jackson that petitioner shot Zeigler while trying to rob him during a drug sale. But, the above-excerpted statement is corroborative evidence of petitioner's confession, except it is hearsay when it is considered for the truth of the matters stated.[5]

_____

[5] The Kansas Court of Appeals also stated: "Furthermore, [Lana] Jackson's version of the events was corroborated by the testimony of [Patricia] Shelinbarger, even though Shelinbarger

The general rule is that hearsay admitted without objection is as strong as any other competent evidence. <u>U.S. v. Castro-Lara</u>, 970 F.2d 976, 981 (1st Cir. 1992); <u>U.S. v. Brown</u>, 348 F.2d 661, 663 (2nd Cir.) <u>cert. denied</u>, 382 U.S. 904 (1965); <u>U.S. v. Alvarez</u>, 584 F.2d 694, 697 (5th Cir. 1978); <u>U.S. v. Hugh Chalmers Chevrolet-Toyota, Inc.</u>, 800 F.2d 737, 739 (8th Cir. 1986); <u>U.S. v. Carney</u>, 468 F.2d 354, 357-58 (8th Cir. 1972); <u>U.S. v. Foster</u>, 711 F.2d 871, 877 (9th Cir. 1983) <u>cert. denied</u>, 465 U.S. 1103 (1984); <u>Martin v. Wainwright</u>, 770 F.2d 918, 938 (11th Cir. 1985); <u>Townsend v. Jones</u>, 331 P.2d 890, 897 (Kan. 1958); <u>Long v. Lozier-Broderick & Gordon</u>, 147 P.2d 705, 707 (Kan. 1944). Such evidence may be considered in determining whether a defendant's confession has corroboration (<u>Tinsley v. State</u>, 993 S.W.2d 898, 900-01 (Ark. 1999)) or whether there has been corroboration of a complainant's testimony as required in divorce proceedings. <u>Jones v. Jones</u>, 286 P.2d 908, 912 (Cal.App. 1955).

The court is convinced petitioner cannot demonstrate that his

---

initially identified the shooter as someone other than Harris." <u>Harris</u>, 2008 WL 4416026 at *6. It is not clear why corroboration of Jackson's extrajudicial statement by Patricia Shelinbarger is pertinent to the issues raised by petitioner. The question is whether <u>petitioner's</u> extra-judicial statements regarding the underlying felony were corroborated. Patricia Shelinbarger's testimony did not mention a drug sale or attempted drug sale or facts indicating that a drug sale or attempted drug sale occurred. Moreover, the Supreme Court has "squarely rejected the notion that 'evidence corroborating the truth of a hearsay statement may properly support a finding that the statement bears "particularized guarantees of trustworthiness."'" <u>Lilly v. Virginia</u>, 527 U.S. 116, 137-38 (1999)(quoting <u>Idaho v. Wright</u>, 497 U.S. 805, 822 (1990)).

trial counsel and appellate counsel provided ineffective assistance of counsel when they failed to argue that there was insufficient corroborative evidence of the underlying felony which was the sale or attempted sale of cocaine.  There is corroboration in the testimony of Detective Chisholm, although that testimony arguably related hearsay statements to which there was no objection.

### 7.  Failure to object to hearsay

Petitioner argues that his trial counsel was constitutionally ineffective because he failed to object to the admission of hearsay testimony.  The Kansas Court of Appeals rejected the ineffective assistance/hearsay argument primarily upon procedural grounds, although the court also mentioned a substantive reason for rejecting the claim.

Petitioner attempted to raise the hearsay issue in his pro se state habeas petition arguing that his counsel was constitutionally ineffective because he "failed to object to the State's introduction of inadmissible hearsay statements made by Lana Jackson, Patricia Shelinbarger's daughter and friend, Jessica Cruz, Eric Donaldson, and Terrence Harvell, which were blatant violations of movant's confrontation rights under the United States and Kansas Constitutions."  Case No. 06 CV 0339 at p. 9.  The district court rejected petitioner's argument without reaching the merits.  The district court stated that:

> Movant does not . . . identify any specific testimony.
> Such a conclusory allegation does not warrant relief,

36

and, in addition, prevents the State and this court from fully addressing the merits of movant's claim.

Case No. 06 CV 0339 at p. 38.

On appeal to the Kansas Court of Appeals, petitioner, who was represented by counsel at that point, commented that it was unfair to an indigent inmate "to deny relief based on a lack of specific citations, when the petition contained references to the specific persons and testimony." _Harris v. State_, Case No. 06-97776-A, Brief of Appellant at pp. 17-18. Petitioner's counsel then made record references to specific hearsay statements, including the statement referred to already in this opinion that Lana Jackson, Jessica Cruz, Russell Cope and Donna Martin said that a drug deal was occurring.

Nevertheless, the Kansas Court of Appeals repeated the holding of the state district court, finding that although petitioner's K.S.A. 60-1507 petition identified certain witnesses whose out-of-court statements were admitted at trial, he failed to specify with particularity which statements violated his confrontation rights. "Thus, it is impossible to ascertain whether the statements were offered to prove the truth of the matter asserted and constituted hearsay." _Harris_, 2008 WL 4416026 at *8. Ironically, this statement was made shortly after the court considered what it described as "Jackson's statement to Chisholm that [petitioner] shot Zeigler while trying to rob him during a drug sale" as proof of the underlying drug crime in this case, thus considering a

supposed extrajudicial statement for the truth of the matters asserted. Id. at *6.

As mentioned, the Kansas Court of Appeals also listed a substantive reason for rejecting petitioner's ineffective assistance/hearsay claim. The court stated that petitioner failed to establish that his trial counsel's failure to object affected the outcome of the trial. Id

While the state court may interpret its laws and procedures to determine whether a state prisoner may obtain an evidentiary hearing, the federal court must apply federal law to determine whether an evidentiary hearing is required under § 2254. Boyle v. McKune, 544 F.3d 1132, 1135-36 (10th Cir. 2008) cert. denied, 129 S.Ct. 1630 (2009). Petitioner is entitled to such a hearing if: 1) he can show that he was diligent in developing the factual basis for his claim in state court, and 2) he asserts a factual basis which, if true, would entitle him to habeas relief. Id. at 1135. The failure to receive a state court evidentiary hearing does not mean that the state prisoner failed to be diligent in developing the factual basis for his claim in state court. Id. (citing Barkell v. Crouse, 468 F.3d 684, 695-96 (10th Cir. 2006)). "Petitioner need only show he 'complied with what reasonably appeared to be the established state-law requirements . . . even if his reasonable interpretation of state law turned out to be wrong.'" Id. (quoting Barkell, 468 F.3d at 694).

The court believes petitioner reasonably complied with what appeared to be established state law requirements to obtain review of his ineffective assistance/hearsay claim.  When petitioner was pro se, he identified the persons whose extrajudicial statements should have been excluded on the basis of the hearsay rule.  The Kansas courts apply a liberal construction to pro se pleadings with an eye towards substantial justice.

> Pro se pleadings of laymen are entitled to such a liberal construction so that relief may be granted if warranted by the facts alleged, without regard to the form of the pleading. . . . It is the substance of the motion that controls, not the form.

Jackson v. State, 573 P.2d 637, 639 (Kan. App. 1977); see also Bruner v. State, 88 P.3d 214, 216-17 (Kan. 2004) (liberally construing a K.S.A. 60-1507 motion to include a request for DNA testing pursuant to a Kansas statute which was not specifically identified in the motion).  Furthermore, under the Kansas Rules of Civil Procedure in force at the time of petitioner's K.S.A. 60-1507 motion, all pleadings were to be "construed as to do substantial justice."  K.S.A. 60-208(f) (subsequently amended by 2010 Kansas laws Ch. 135).

Under Kansas law, to obtain an evidentiary hearing upon a state habeas motion, the petitioner is required to allege a factual basis in the motion to support his claim.  Sullivan v. State, 564 P.2d 455, 457 (Kan. 1977).  The "motion must set forth a factual background, names of witnesses, or other sources of evidence

demonstrating movant's entitlement to relief." <u>State v. Holmes</u>, 102 P.3d 406, 425-26 (Kan. 2004). However, affidavits to support the factual allegations are not required. <u>Swenson v. State</u>, 169 P.3d 298, 303 (Kan. 2007).

Petitioner's motion for state habeas relief set forth concisely, as requested on the form, his claim that his trial counsel was ineffective for failing to object to the hearsay statements of certain identified persons. The trial transcript in this matter is short, so it is not difficult to find those statements. Moreover, it is fairly obvious from the other arguments in petitioner's motion that the alleged hearsay was contained in the testimony of Detective Chisholm. <u>Harris v. State</u>, Case No. 06 CV 0339 at p. 8 (referring to the hearsay testimony of Detective Chisholm). This is also obvious from the arguments made in the motion in limine and the new trial motion which were previously in front of the trial court.[6] The statements were further identified by record citation in petitioner's appellate brief. The Kansas Court of Appeals was sufficiently familiar with Lana Jackson's statements that it referred to an alleged hearsay statement by Lana Jackson in its order. For these reasons, the court finds that petitioner could have reasonably believed that his request for an evidentiary hearing in state court met the

---

[6]The trial court judge who decided these motions was different from the judge who decided petitioner's state habeas petition.

requirements for such a hearing under the then-existing law. See Crooks v. State, 2006 WL 90104 (Kan.App. 1/13/2006) (giving a broad construction to an ineffective assistance of counsel claim); Ziesensis v. State, 227 P.3d 1010 (Kan.App. 3/26/2010) (considering a claim of ineffective assistance of appellate counsel for not raising a hearsay claim on appeal in spite of an absence of specificity); but see, Kesselring v. State, 2009 WL 196193 (Kan.App. 1/23/2009) (refusing to consider hearsay claim for failure to identify the statements at issue).

The next question is whether petitioner's allegations, if true, would entitle petitioner to relief. If so, then petitioner should have an evidentiary hearing, unless his claim can be resolved on the record. Boyle, 544 F.3d at 1136. If the record refutes petitioner's factual allegations or otherwise precludes habeas relief, an evidentiary hearing is not needed. Id. at 1136-37 (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).

The state court's determination is not awarded deference here since it did not constitute an adjudication on the merits. Id. at 1137. The primary justification for rejecting petitioner's ineffective assistance/hearsay claim was that petitioner did not specify with particularity which statements were hearsay.[7] Even though the Kansas Court of Appeals also stated that petitioner failed to establish that his trial counsel's failure to object

---

[7] This was the only reason listed by the state district court.

affected the outcome of the trial, there is no reason to think that the court actually considered the merits of petitioner's claim since it would be "impossible" (in the words of the court) to evaluate the prejudice from the failure to object to hearsay if the court did not know which statements the court needed to assess.

The court shall now discuss whether petitioner's ineffective assistance/hearsay claim would entitle petitioner to relief if true. Petitioner's claim would entitle petitioner to relief if petitioner could establish that the failure to object to hearsay constituted deficient representation and that if an objection had been made there is a reasonable probability of a different outcome. As previously mentioned in this order, a hearsay statement from Lana Jackson, Jessica Cruz, Russell Cope and Donna Martin appears to be the only corroborative evidence of petitioner's confession as it relates to the underlying felony for his felony murder conviction. There is no other corroborative evidence of a sale of cocaine or attempted sale of cocaine. Therefore, an objection to that hearsay statement arguably could have allowed petitioner to successfully claim that there was insufficient evidence to support his conviction under the Kansas corpus delicti rule.[8]

A hearsay statement is a statement "other than one made by the declarant while testifying at the trial or hearing, offered in

---

[8] The court is not aware of any other issue where an objection to hearsay may have created a reasonable probability of a different outcome.

evidence to prove the truth of the matter asserted." FED.R.EVID. 801(c); see also, K.S.A. 60-460 (similar definition).  The failure to object to hearsay can be considered deficient performance.  See Gonzales v. McKune, 247 F.3d 1066, 1073 (10th Cir. 2001) vacated in part on other grds, 279 F.3d 922 (10th Cir. 2002).

However, it is a fundamental rule that where a defendant opens the door or invites error, there can be no reversible error.  U.S. v. Benson, 220 F.3d 964, 968 (8th Cir. 2000) (opening door on cross-examination to admission of statement of non-testifying co-defendant).  Where a defense counsel opens the door on an otherwise inadmissable line of questioning, it acts as a limited waiver which allows the prosecution to introduce further evidence on the same topic.  Lopez-Medina, 596 F.3d at 731.  Thus, defense counsel may open the door to hearsay testimony by a police officer regarding information the officer received from an informant by cross-examining the officer regarding such information.  Id.; see also, U.S. v. Prince, 883 F.2d 953, 961-62 (11th Cir. 1989) (defense counsel opens door to prejudicial hearsay testimony by asking government agent about what he learned about the source of $77,000 used to purchase marijuana); State v. Johnson, 905 P.2d 94, 99-100 (Kan. 1995) (a defendant may open the door to inadmissible hearsay during the examination of witnesses); State v. Fisher, 154 P.3d 455, 482-83 (Kan. 2007) (by opening door to otherwise inadmissible hearsay, a defendant waives the Sixth Amendment right to

confrontation); <u>State v. Birth</u>, 158 P.3d 345, 352-55 (Kan.App. 2007) <u>cert. denied</u>, 552 U.S. 1215 (2008) (opening door to hearsay statements to police officer by asking the officer during cross-examination about those hearsay statements).

In this case, petitioner's trial counsel asked questions of Detective Chisholm which were designed to elicit statements by an out-of-court declarant regarding whether drugs were involved in the incident where Zeigler was killed. These statements were offered for the truth of the matters asserted therein to the extent that they suggested that petitioner's statements during interrogation were not true or that petitioner's interrogators made untruthful statements regarding the incident to petitioner. This opened the door to the prosecutor's questions regarding statements that a drug deal was occurring. In essence, this was the holding of the trial court upon petitioner's new trial motion, where petitioner requested a new trial on the basis of the admission of hearsay.

For this reason, there are no grounds to conduct an evidentiary hearing because the facts as alleged by petitioner would not entitle petitioner to habeas relief. The hearsay objection he claims should have been made would have failed if raised by his trial counsel because his trial counsel opened the door to the admission of the hearsay.[9] Thus, petitioner cannot

---

[9] The court further believes that petitioner's trial counsel's questioning that opened the door was conceivably part of a reasonable trial strategy to limit the damage from the admission

show prejudice (as required to prove ineffective assistance of counsel) from his trial attorney's alleged failure to object to hearsay.

IV.  CONCLUSION

For the reasons explained above, petitioner's request for habeas relief under § 2254 is hereby denied.

**IT IS SO ORDERED.**

Dated this 17th day of August, 2010 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge

---

of petitioner's statements during interrogation.